**T.E.B. v. S.L.B.**

C.P. of Lycoming County, No. 12-21531

*Rachael Wiest Benner*, for husband.
*Christina Dinges*, for wife.

MCCOY, *J.*, June 23, 2015—

ORDER

AND NOW, this 23rd day of June, 2015, after a hearing held on June 11, 2015, in regard to the Petition for Contempt/Petition for Enforcement of Property Settlement Agreement filed by Wife on April 17, 2015, and the Response to Petition for Contempt/Petition for Enforcement of Property Settlement Agreement with Counterclaim for Enforcement of Property Settlement Agreement filed by Husband on May 29, 2015, at which time Husband was present with his counsel, Rachael Wiest Benner, Esquire, and Wife was present with her counsel, Christina Dinges, Esquire. The issue before the Court concerns the language in the Qualified Domestic Relations Orders prepared by Conrad Siegel Actuary, in regard to Husband's City of Williamsport, PA Deferred Compensation Plan, Husband's City of Williamsport Police Pension Plan, and Wife's Lycoming County Employees' Retirement System Plan. Both parties stipulated to the following facts:

1. The parties entered into a Marriage Settlement Agreement dated December 5, 2013.

2. Jonathan Cramer of Conrad Siegel Actuary was hired to prepare qualified domestic relations orders pursuant to paragraph 16 A. through D. of the parties' Marriage Settlement Agreement.

3. The parties obtained drafts of the Qualified Domestic Relations Orders from Conrad Siegel.

4. The Plan Administrators for each of the retirement accounts approved the Qualified Domestic Relations Orders as drafted.

5. On January 19, 2015, Wife's counsel forwarded correspondence to Husband's counsel which included the Qualified Domestic Relations Orders which had been signed by Wife.

6. Husband has failed to sign the Qualified Domestic Relations Orders.

7. Both parties agreed to pay the remaining balance owed to Mr. Cramer for preparation of the QDROs on or before June 30, 2015.

8. The Marriage Settlement Agreement was drafted by Husband's counsel, Rachael Wiest Benner.

9. Wife's counsel, Attorney Dinges, made changes and additions to the Marriage Settlement Agreement before it was finalized. Specifically, Attorney Dinges requested that the language "pursuant to current law" was placed in each of the paragraphs concerning Wife's retirement, Husband's retirement, and Husband's Deferred Compensation account.

In dispute between the parties is paragraph 7 of the Domestic Relations Order for Husband's City of Williamsport, PA Pension Plan. Paragraph 7 states as follows:

"This DRO assigns to Alternate Payee, an amount equal to 55.0% of the marital portion of the Participant's accrued retirement benefit under the Plan as of the Participant's date of retirement. The marital portion of the Participant's accrued retirement benefit equals the

monthly retirement benefit, payable in the normal form of payment for the Participant's lifetime, multiplied by a fraction equal to 7.85 years (the period from December 18, 2004, date of marriage, until October 24, 2012, date of separation) divided by the years of credited benefit service (including any partial year credited) earned by the Participant as of the date his benefit accruals cease. If any cost-of-living increase or other increase is applied to the pension payable to the Participant, the same increase shall apply to the Alternate Payee's share, but only to the extent permitted by the Plan and state law."

Counsel for Wife argues that this paragraph is consistent with Paragraph 16 C. of the Marriage Separation Agreement which indicates that "Wife shall receive 55% of the marital portion and Husband will receive 45% of the marital portion pursuant to current law. For purposes of determining the marital portion, the parties agree they were married on December 18, 2004, and that they separated on October 24, 2012." Counsel for Wife further argues that the Domestic Relations Order as drafted at Paragraph 7 is consistent with current law. Wife argues that 23 Pa.C.S.A. §3501(c)(1) provides that when a defined benefit retirement plan is to be distributed between the parties, the marital portion is to be defined by a coverture fraction and shall include all post-separation enhancements, except for enhancements arising from post-separation monetary contributions by the employee spouse.

Husband argues that the language in the parties' Marriage Settlement Agreement which states "for purposes of determining the marital portion, the parties agree that they were married on December 18, 2004, and separated

on October 24, 2012" means that it was the intent of the parties that only that portion of Husband's Deferred Compensation Plan would be utilized for distribution and that anything that occurred after these dates would be considered Husband's post-separation monetary contributions made by the efforts and/or contributions of Husband. Additionally, Husband argues that the language in the Agreement which states "pursuant to current law" means pursuant to current contract law which allows parties to agree to whatever they wish to agree to despite what the law states. Husband further argues that because his Defined Benefit Retirement Plan utilized the average of the three highest years of his pay to determine his pension payment at retirement, that Wife's portion should be determined utilizing his highest three years of pay between the date of marriage and date of separation to determine Wife's 55% of the total marital portion.

The Court finds that the language of Paragraph 16 B. through D. in the parties' Marriage Settlement Agreement is clear and unambiguous. The parties agree that Wife would receive 55% of the marital portion and Husband would receive 45% pursuant to current law. At the time the parties executed the Marriage Settlement Agreement, the current law regarding the division of defined benefit retirement plans was outlined at 23 Pa.C.S.A. §3501(c)(1) which states as follows:

> "In the case of the marital portion of a defined benefit retirement plan being distributed by means of a deferred distribution, the defined benefit plan shall be allocated between its marital and nonmarital portions solely by use of a coverture fraction. The denominator of the coverture fraction shall be the number of months

the employee spouse worked to earn the total benefits and the numerator shall be the number of such months during which the parties were married and not finally separated. The benefit to which the coverture fraction is applied shall include all post-separation enhancements except for enhancements arising from post-separation monetary contributions made by the employee spouse, including the gain or loss on such contributions."

The next sentence in the parties' agreement, "for purposes of determining the marital portion, the parties agree that they were married on December 18, 2004, and they separated on October 24, 2012" clearly applies to 23 Pa.C.S.A. §3501(c) which states that "the denominator of the coverture fraction shall be the number of months the employee spouse worked to earn the total benefits and the denominator shall be the number of such months during which the parties are married and not finally separated."

The Court dismisses Husband's argument that the language in the Marriage Settlement Agreement indicates that the parties' intent was to not agree to the current statutory law regarding the division of the Defined Benefit Plan, but rather apply contract principles which allow the parties to agree to a distribution other than the current statute. Husband's argument is without merit. The parties clearly agreed to divide the Defined Benefit Plan pursuant to 23 Pa.C.S.A. §3501(c). The dates in the Agreement clearly show the parties' intent in regard to the determination of the denominator for the coverture fraction.

Husband next argues that because his Defined Benefit Plan utilizes the average of the three highest years of his pay to determine his pension payment at retirement, that Wife's portion should be determined utilizing his highest

three years of pay between the date of marriage and the date of separation. The Court finds that this argument also fails. Pursuant to 23 Pa.C.S.A. §3501(c)(1), the benefit to which the coverture fraction is applied shall include all post-separation enhancements except for enhancements arising from post-separation monetary contributions made by the employee spouse. In the case of *MacDougall v. MacDougall*, 202 Pa. Super. 83, 49 A.2d 890 (212), the Court found that post-separation COLAs are marital property. In *Meyer v. Meyer*, 561 Pa. 225, 749 A.2d 917 (Pa. 2000), the Court held that husband's action in purchasing two years of additional service to obtain a special retirement option was marital property. The Court noted that what was required by husband to receive the benefits in this case was that he accumulated enough years of service and that without the marital years of service, he could not have done so. In the case of *Gordon v. Gordon*, 545 Pa. 391, 681 A.2d 732 (Pa. 1996), husband was offered retirement incentives in the form of supplemental retirement income and a bonus, which was calculated based on the total years of service and accumulation of past bonuses. The Court concluded that these increases in Husband's retirement benefit were marital property because "for the most part, the increased benefits were not attributable to the efforts or contributions of husband." Rather, the Court concluded that the supplemental retirement income and the bonuses were simply benefits based upon years of service, and so required no effort or contribution from the husband.

As the above cases hold, the Court finds that utilization of Husband's pay years post-separation to determine his highest three years of pay for purposes of determining his pension payment at retirement is marital property. The years of service that Husband acquired during the

marriage were a necessary component towards his overall employment. But for the years of service Husband had during the parties' marriage, he would not have had the total years of service upon which his retirement is based.

The Petition for Contempt/Petition for Enforcement of Property Settlement Agreement filed by Wife requests Husband to sign not only the Qualified Domestic Relations Order for Husband's City of Williamsport Police Pension Plan (Defined Benefit Retirement Plan), but also requests Husband to sign the Domestic Relations Order for Husband's City of Williamsport, PA Deferred Compensation Plan, as well as signing the Domestic Relations Order for Wife's Lycoming County Employees' Retirement System. Husband presented no argument to the Court, either orally or in the Memorandum of Law submitted, as to why the Stipulation for Division of Benefits and Domestic Relations Order drafted in regard to the division of Husband's City of Williamsport, PA Deferred Compensation Plan was not consistent with the terms of the parties' Marriage Settlement Agreement, or that the Domestic Relations Order regarding Wife's Lycoming County Employees' Retirement System Plan was not consistent with the terms of the parties' Marriage Settlement Agreement. Husband does, in his Counterclaim for Enforcement of Marriage Settlement Agreement, make a blanket allegation that "the QDROs prepared by Conrad Siegel are legally incorrect as they include as a benefit to Petitioner post-separation monetary contributions made by Respondent" and that "the QDROs prepared by Conrad Siegel are not consistent with the terms of the parties' Marriage Settlement Agreement as they include as a benefit to Petitioner monies earned by the Respondent after the date of October 24, 2012."

The Stipulation for Division of Benefits and Domestic Relations Order drafted by Conrad Siegel in regard to Husband's City of Williamsport, PA Deferred Compensation Plan indicates that Wife is to receive 55% of the balance in Husband's account under the Plan as of October 24, 2012, adjusted to reflect the investment earnings or losses on such share from October 24, 2012 through the date of transfer to Wife's separate account. The Court finds that this language does not give Wife entitlement to any of Husband's post-separation monetary contributions, nor does it provide Wife with monies earned by Husband after the date of separation on October 24, 2012. The Court further finds that the language in the Stipulation for Division of Benefits and Domestic Relations Order in regard to Husband's City of Williamsport, PA Deferred Compensation Plan are consistent with the parties' Marriage Settlement Agreement and the current law in regard to the division of marital assets pursuant to 23 Pa.C.S.A. §3501(c)(1).

The Court also finds that the Domestic Relations Order drafted by Conrad Siegel in regard to Wife's Lycoming County Employees' Retirement System Plan is consistent with the parties' Marriage Settlement Agreement and the current law pursuant to 23 Pa.C.S.A. §3501(c)(1).

Wife requests the Court to find Husband in contempt for his failure to comply with the terms of the Marriage Settlement Agreement dated December 5, 2013, as a result of his failure to sign the Qualified Domestic Relations Orders as drafted by Conrad Siegel. A Court's contempt powers are available when a party disobeys a Court order. 42 Pa.C.S.A. §4132. The power to punish for contempt is a right inherent in the Court. *Siniako v. Siniako*, 664 A.2d 1005, 1009 (Pa. Super. 1995). In this particular case, because the act of contempt complained of is the refusal

to do an act that was ordered by the Court pursuant to the parties' agreement for the benefit of a private party, proceedings to enforce compliance with said order are civil in nature. *Lachat v. Hinchliffe*, 769 A.2d 481, 488 (Pa. Super. 2001). In civil contempt proceedings, the complaining party has the burden of proving by a preponderance of evidence the following: (1) that the contemptor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the acts constituting the contemptive violation were volitional; and (3) the contemptor acted with wrongful intent. *Lachat, supra.* At 489. Based upon what has occurred in this case, the Court does not find that Husband acted with wrongful intent. It is clear that both parties proceeded pursuant to their agreement to have Conrad Siegel prepare qualified domestic relations orders in regard to the various retirement plans. Since that date, there has been on-going communication between counsel in regard to the signing of the Qualified Domestic Relations Orders. There was no evidence presented that Husband simply refused to sign the Qualified Domestic Relations Order as a result of his intent to prohibit Wife from receiving a portion of his retirement plan.

Based upon the foregoing, the Court hereby finds that the Domestic Relations Order drafted in regard to Husband's City of Williamsport Police Pension Plan, the Stipulation for Division of Benefits and Domestic Relations Order drafted in regard to Husband's City of Williamsport, PA Deferred Compensation Plan, and the Domestic Relations Order prepared in regard to Wife's Lycoming County Employees' Retirement System Plan, as drafted by Conrad Siegel are consistent with the terms of the parties' Marriage Settlement Agreement dated December 4, 2013. Husband is hereby ORDERED and

DIRECTED to sign the Domestic Relations Order in regard to his City of Williamsport Police Pension Plan as drafted by Conrad Siegel, the Stipulation for Division of Benefits and Domestic Relations Order regarding Husband's City of Williamsport, PA Deferred Compensation Plan as drafted by Conrad Siegel, and the Domestic Relations Order regarding Wife's Lycoming County Employees' Retirement System Plan, as drafted by Conrad Siegel within ten (10) days of the date of this Order. Counsel for Husband shall thereafter immediately provide the executed documents to Wife's counsel for submission to the appropriate Plan Administrators. Further, pursuant to the stipulation of the parties, the balance owed to Mr. Cramer shall be paid in full on or before June 30, 2015.